IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**HAMID AL RAZAK,**

      Petitioner,

by his Next Friend
**BISHER AL RAWI**

      v.                                     No. 05 CV 1601
                                                                       (GK)

**GEORGE W. BUSH, DONALD RUMSFELD,
JAY HOOD, AND MIKE BUMGARNER,**

      Respondents.

**PETITIONER'S OPPOSITION TO GOVERNMENTS MOTION
TO EXAMINE PRIVILEGED COMMUNICATIONS SEIZED
WITHOUT COURT APPROVAL OR NOTICE TO COUNSEL**

      The government's motion should be denied. The materials in question are privileged attorney-client communications. As a matter of fundamental principle, and by specific order of this Court, those communications were to be secure against seizure and review by the government. The government's seizure and review of those communications, without prior approval by the Court and notice to counsel, was illegal. The government's failure to disclose its actions to the Court and counsel until nearly a month after the fact is deplorable. In the name of investigating three prisoner deaths, the government has destroyed a fundamental privilege and shattered any confidence the prisoners might still have had that their communications with their counsel would be safe from the government's prying eyes.

      The government claims that the privileged communications were seized and examined in the course of an investigation into the suicide deaths of three prisoners and that the communications reviewed supports its wholesale seizure and review of all privileged communications. But

DC: 2218005-2

the stakes are too high for the Court simply to accept the factual assertions that form the basis of the government's instant motion.

The Court should sanction the government for seizing and reviewing the privileged communications without prior approval of the Court and notice to counsel, and for failing to report its actions to the Court and counsel until nearly a month after the fact. The Court should also investigate how the Department of Justice allowed this massive breach of the attorney-client privilege to occur.

While no protective order has yet been entered in this case (mot. pending: filed 11 July 2006, Doc. # 28), the argument herein loses none of its force since, if protective order is entered, the matter under review will affect future communication between Petitioner and counsel.

## ARGUMENT[1]

**1. The Government Should Be Sanctioned For Failing To Seize the Prisoners' Legal Papers Without Prior Approval by the Court and Notice to Counsel.**

On June 10, 2006, the military reported that three prisoners at Guantánamo Bay had been found dead in their cells and reported the prisoners' deaths as suicides.

Although the military reported the deaths as suicides, Navy Rear Adm. Harry B. Harris, the commander of Joint Task Force–Guantánamo, requested an "investigation" by the Naval Criminal Investigative Service (NCIS) to establish the "official cause and manner of death."[2]

---

[1] The government argues in a footnote to its motion that the Detainee Treatment Act divested the Court of jurisdiction over all of the Guantánamo habeas cases. (Mot. at 2 n.3.) The Supreme Court, however, has held that "§ 1005(e)(1) does not strip federal courts' jurisdiction over cases pending on the date of the DTA's enactment." *Hamdan v. Rumsfeld*, slip op. 20 n.15. By its filing of the instant motion, the government implicitly acknowledges the Court's continuing jurisdiction.

[2] Reuters, *Three Guantanamo Detainees Die, US Army*, June 11, 2006. *available at* http://www.cageprisoners.com/articles.php?id=14371.

Now, nearly a month later, the government has disclosed that, between June 10 and June 18, as part of the purported "investigation," NCIS seized and examined over half a ton of written communications between Guantánamo prisoners and their lawyers. The government claims that it seized these materials because notes found in the cells of the dead prisoners suggested the illicit use of privileged materials for communications among the prisoners; but there is no way to know whether the notes suggested such use of privileged communications or, if they did, whether that was the actual reason for the government's subsequent actions.

The government seized and examined these privileged communications over an eight-day period without court approval or supervision, and without prior notice to the prisoners' counsel, and then waited nearly a month before disclosing its actions to the Court and counsel. The government's seizure and examination of these materials violated not only this Court's general orders directing the government to respect the attorney-client privilege but also the Protective Order entered by this Court to ensure the protection of that privilege.

Having belatedly disclosed its illegal seizure and inspection of these privileged materials, the government now asks the Court to condone its actions and permit it to retain the seized materials and examine them more closely. The government sought judicial sanction for its actions only after habeas counsel, informed of the government's actions by their clients, began to seek relief from the Court. (Mot. To Modify Stay To Direct Resp'ts To Return Impounded Privileged Legal Material and for Other Relief, *Abdullah v. Bush*, No. 05-00023 (RWR) (Filed July 5, 2006). The Government states that its instant motion is an opposition to the *Abdullah* motion. U.S. Mot. at _n.l.) It now seeks relief by obtaining blanket *post hoc* court approval of its actions.

The fact that Petitioners' legal papers were seized over an eight-day period demonstrates that no exigent circumstances required the government to act without first seeking the approval

of the Court and notifying counsel.  The Department of Justice either approved the military's seizure of privileged legal materials without notice or court approval, or failed to have in place procedures to prevent what happened from occurring.  The Department's failure to disclose the government's actions until the *Abdullah* motion forced its hand suggests that the Department was a full partner in the military's breach of the privilege.  The Court should sanction the government for its unilateral, illegal, and devious conduct.

### 2. Petitioner's Attorney-Client Materials Cannot Be Seized and Reviewed Without An Individualized Showing of Probable Cause.

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981).  Its purpose is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998); *see also*: *Lanza v. State of New York*, 370 U.S. 139, 143-44 (1962), wherein the Court stated: "(I)t may be assumed that even in a jail, or perhaps especially there, the relationships which the law has endowed with particularized confidentiality must continue to receive unceasing protection."  As this Court has recognized in the context of the Guantánamo litigation, "[t]he privilege that attaches to communications between counsel and client has long held an exceptional place in the legal system of the United States." *Al Odah,* 346 F. Supp. 2d at 10.

Nowhere is the effectuation of the privilege more important than in the context of pretrial detention. "An inmate's need for confidentiality in his communications with attorneys through whom he is attempting to redress his grievances is particularly important." *Bach v. Illinois*, 504 F. 2d 1100, 1102 (7th Cir. 1974); *see also Johnson_El v. Schoemehl,* 878 F. 2d 1043, 1051 (8th Cir. 1989) ("Pretrial detainees have a substantial due process interest in effective com-

4

munication with their counsel and in access to legal materials. When this interest is inadequately respected during pre-trial confinement, the ultimate fairness of their eventual trial can be compromised.") For such prisoners, "contact with an attorney and the opportunity to communicate privately is a vital ingredient to the effective assistance of counsel and access to the courts." *Bach,* 504 F.2d at 1102. Even for prisoners convicted of crimes, the Supreme Court has held, "[r]egulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right to access to the courts are invalid." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974).

The government's actions here are a plain violation of the terms of the Protective Order and accompanying Access Procedures entered in other cases. The government does not attempt to justify its actions under the Protective Order, but rather admits that the seized materials "will likely include some number of attorney-client communications potentially subject to attorney-client privilege." (Mot. at 9).

But the government's unilateral abrogation of the privilege would have been unlawful even if it had not directly violated a Court order. Abrogation of the attorney-client privilege in any context requires the government to make a specific, *individualized showing* that there is sufficiently compelling justification for invading the privilege.

### 3. The Government Has Made No Such Individualized Showing.

The government has presented no specific evidence that *any* of Petitioners, let alone Petitioner herein, have misused their attorney-client materials. Indeed, the government does not even purport to do so. Four or five documents seized from just a few prisoners cannot justify seizing over half-a-ton of privileged materials from hundreds of prisoners.

These documents, moreover, offer little support for the government's position that attorney-client materials are being misused – let alone specific evidence that any of Petitioners have

5

misused such materials. The initial documents cited by the government were found either in the possession of one of the deceased or were written by one of the deceased. Yet, apparently not one inappropriate document was found in an attorney-client envelope. There are a number of problems with the "evidence" the government possesses.

First, the document labeled "FOUO" is a red herring. "FOUO" or "For Official Use Only" stamps are *not* classification designations; documents so-labeled are not necessarily sensitive in any manner.

Second, the so-called "knot-tying" document found by the government is not purported to have been labeled "attorney-client material" and is not alleged to have been discovered in a prisoner's privileged legal folder. (Again, counsel has not seen the document and has no way even to know whether the government's characterization of this document is fair.) The document therefore appears to have no relevance to the instant motion, which after all seeks review only of privileged items that have been confiscated by government agents.

Third, the government does alert counsel and the Court to a single document that – from the government's description of it, anyway – likely should not have been in the possession of a prisoner. Remarkably, however, the document is an *email from JTF-Guantánamo itself* – a document that obviously was not provided to a prisoner by counsel, since counsel does not have access to such documents. How did this document come into possession of a prisoner? Counsel respectfully suggests that the NCIS inquire of JTF-Guantánamo and its staff, rather than take advantage of JTF-Guantánamo's apparent security breakdown as an excuse to rifle through the privileged papers of every detainee in the prison.

The government's generalized security concerns are of the type already rejected by the Court. The government, when it sought to justify the real-time monitoring and recording of at-

6

torney-client meetings, claimed that the prisoners would use meetings with counsel "to further terrorist operations or otherwise disclose information that will cause immediate and substantial harm to national security." *Al Odah*, 346 F. Supp. at 4 n.4. The Court rejected the government's claims, finding them "thinly supported." As for the government's speculation that Petitioners' counsel are improperly sharing classified information with their clients, this Court long ago reminded the government that "the government's decision to grant an individual attorney a security clearance amounts to a determination that the attorney can be trusted with information at that level of clearance." *Al Odah,* 346 F. Supp. 2d at 14.

Little has changed – except for the government's new-found concern with suicide prevention. The government introduced interrogation techniques designed to wear down Petitioners mental health. It resisted any inquiry into detainees' health – even as it recorded hundreds upon hundreds of suicide attempts. After driving detainees to suicide, the government's concern for the mental health of its captives is impossible to take seriously.

The government's motion is a not too opaque attempt to chill attorney-client communications. In it, the government suggests that "possibly others" – *i.e.*, non-prisoners – may have participated in a "manifest abuse of the legal mail system." (Mot. at 10.) This unfounded assertion is a veiled threat to habeas counsel, designed to deter them from communicating effectively with their clients. Habeas counsel are all officers of the Court. There is no warrant for a new team of Department of Defense lawyers to begin scouring their privileged communications in order to uncover an imagined plot to assist their clients in committing suicide.

## CONCLUSION

For the preceding reasons, the government's motion should be denied, Petitioners' legal papers should be ordered returned immediately, and hearing to determine appropriate sanctions against the government should be scheduled.

Dated: Bearsville, New York
      July 18, 2006

                      Respectfully submitted,

                      _____/s/_____
                      ALAN N. SUSSMAN
                      Sussman Office
                      Post Office Box 379
                      Bearsville, New York  12409
                      Tel:  (845) 679-6927
                      Fax:  (845) 679-6927

                      *Of Counsel*
                      Barbara Olshanksy (BO3635)
                      Gitanjali S. Gutierrez (GG1234)
                      Center for Constitutional Rights
                      666 Broadway, 7th Floor
                      New York, New York  10012
                      Tel: (212) 614-6464
                      Fax:  (212) 614-6499

**CERTIFICATE OF SERVICE**

I hereby certify that true and correct copies of the Petitioner's Opposition to Governments Motion to Examine Privileged Communications Seized without Court Approval or Notice to Counsel was served upon the following person by e-mail on the 18th day of July, 2006:

Preeya M. Noronha
Trial Attorney
Civil Division
Federal Programs Branch
20 Massachusetts Ave., NW
Washington, D.C. 20530
E-Mail: preeya.noronha@usdoj.gov

And upon the following person by Certified Mail, Return Receipt Requested:

Alberto R. Gonzales
Attorney General of United States
U.S. Department of Justice
Robert F. Kennedy Building, Room 5111
Tenth Street & Constitution Ave., NW
Washington, D.C. 20530

_____/s/_____
ALAN N. SUSSMAN