**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AHMED DOE, *et al.*, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | No. 1:05-CV-1458 (ESH)(LFO) |
| | ) | |
| | ) | |
| GEORGE W. BUSH, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |
| ——————————————————— | ) | |

| | | |
|---|---|---|
| NABIL (Last Name Unknown), *et al.*, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | No. 1:05-CV-1504 (RMC)(LFO) |
| | ) | |
| | ) | |
| GEORGE W. BUSH, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |
| ——————————————————— | ) | |

| | | |
|---|---|---|
| ABBAR SUFIAN AL HAWARY, *et al.*, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | No. 1:05-CV-1505 (RMC)(LFO) |
| | ) | |
| | ) | |
| GEORGE W. BUSH, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |
| ——————————————————— | ) | |

SHAFIIQ (Last Name Unknown), *et al.*,    )
                                          )
        Petitioners,    )
                                          )
        v.    )        No. 1:05-CV-1506 (RMC)(LFO)
                                          )
                                          )
GEORGE W. BUSH, *et al.*,                 )
                                          )
        Respondents.    )
_____)


HAMID AL RAZAK, *et al.*,                 )
                                          )
        Petitioners,    )
                                          )
        v.    )        No. 1:05-CV-1601 (GK)(LFO)
                                          )
                                          )
GEORGE W. BUSH, *et al.*,                 )
                                          )
        Respondents.    )
                                          )
_____)


USAMA HASAN ABU KABIR, *et al.*,          )
                                          )
        Petitioners,    )
                                          )
        v.    )        No. 1:05-CV-1704 (JR)(LFO)
                                          )
                                          )
GEORGE W. BUSH, *et al.*,                 )
                                          )
        Respondents.    )
_____)

MUHAMMED QASIM, *et al.*,        )
                                 )
            Petitioners,         )
                                 )
      v.                         )            No. 1:05-CV-1779 (JDB)(LFO)
                                 )
                                 )
GEORGE W. BUSH, *et al.*,        )
                                 )
            Respondents.         )
_____  )

## REPORT AND RECOMMENDATION

In several Guantanamo Bay *habeas* cases pending in the District Court, the Government moved for an order to show cause why Petitioners' cases should not be dismissed for lack of proper "next friend" standing. In the above-captioned cases, Judges Huvelle, Collyer, Urbina, Kessler, Robertson and Bates transferred the Government's motion to Judge Oberdorfer for decision pursuant to Local Civil Rule 40.6(a). This Report and Recommendation is submitted to Judge Oberdorfer in response to his directive to the undersigned to determine "how counsel for Petitioners may obtain access to the detainees who allegedly seek to be represented by next friends to determine if the detainees will authorize counsel to represent them directly." *See* Order of November 4, 2005.[1]

As explained in greater detail below, in late March, 2006, I began ordering Respondents to permit counsel to meet with the detainees directly, as required by the Protective Order. As of October 5, 2006, detainees in at least four of the above-captioned cases - *Qasim v. Bush*, 05-1779 (JDB); *Kiyemba v. Bush*, 05-1509 (RMU); *Kabir v. Bush*, 05-1704 (JR); *Nabil v. Bush*, 05-1504 -

---

[1] Respondents sought reconsideration of that Order, which Judge Oberdorfer denied. *See* Minute Order of November 17, 2005.

have met directly with their counsel. At least two of these detainees, Muhammed Qasim and

Nabil, have already authorized counsel to represent them directly.[2] Respondents' Motion to

Dismiss for Lack of Proper Next Friend Standing is thus already moot in *Qasim* and *Nabil*, and

may well become moot in the remaining cases. Therefore, I recommend that you deny

Respondents' Motion without prejudice to renew if, within ten (10) days of counsel's second

visit with a detainee, counsel fails to submit evidence of his or her authorization to represent that

detainee.

I.      *Protective Order and Detainees' Access to Counsel*

On March 21, 2006, in a case referred to me by Judge Roberts,[3] I ordered the Government

to permit counsel to meet with a detainee to confirm his "alleged" request for representation to

challenge his detention. *See Adem v. Bush*, 425 F. Supp. 2d 7 (D.D.C. 2006), *aff'd*, No. 05-723,

2006 WL 1193853 at *3-7 (D.D.C. April 28, 2006). In *Adem*, as in the above-captioned cases, a

detainee had asked a fellow detainee for help in finding a lawyer to help him challenge his

detention. Adem asked Bisher Al Rawi, a fellow detainee who spoke English and who was

already represented by counsel, to help him get a lawyer. Al Rawi forwarded Adem's request to

his lawyer, who in turn found Adem a lawyer who filed suit on Adem's behalf. Respondents,

however, refused to allow Adem to meet with counsel. Respondents took the position that the

---

[2]Petitioners' counsel in the remaining cases have not yet reported back to the undersigned
regarding the results of counsel's meeting with their clients. As explained in greater detail in this
Report and Recommendation, counsel for Petitioners are permitted two visits with the detainees
before they must submit an authorization of direct representation.

[3]Judge Roberts referred Petitioner's motion for access to counsel to me for resolution
pursuant to the Calendar and Case Management Committee's referral to me of all motions
"pertaining to interpretation or construction of any protective order" entered in any of the
Guantanamo *habeas* cases for resolution pursuant to LCvR 72.2(a).

Protective Order[4] required counsel to submit evidence of their authority to represent a detainee

before being permitted access to him, even for the sole purpose of confirming Petitioner's verbal

request for counsel.  Respondents further asserted that such evidence must take the form of either

a proper next friend petition or a written, signed authorization from the detainee himself.

With respect to the narrow question of the timing of counsel's submission of evidence of

authorization to represent a detainee, I ruled that a plain reading of the Protective Order dictates

that counsel for a detainee submit such evidence within ten (10) days of counsel's second visit

with a detainee.  *Adem*, 425 F. Supp. 2d at 20-23.  I further ruled that Respondents' pending

challenge to Petitioner's next friend standing did not prevent this Court from granting access to

counsel under the terms of the Protective Order.  *Id.* at 23-24.  I explained that the issue facing

the Court was not whether Petitioner could demonstrate a sufficiently close relationship with his

fellow detainee to maintain traditional next friend standing.  Rather, the question facing the Court

was whether the Court's authority to "'craft [the] procedures necessary' to allow [a detainee] to

'present the facts surrounding [his] confinement to the Court'" was so inherently limited that

Respondents could "insist on a written *pro se* petition as the sole procedural mechanism by

which a detainee may communicate his request for counsel or seek to challenge his potentially

indefinite detention without charge."  *Id.* at 24.  I found that the Court's authority was not so

---

[4]In recognition of the security concerns attendant to the Guantanamo *habeas* cases, the
Protective Order sets procedures that counsel must follow in order to meet and communicate
with their clients.  The Protective Order was initially approved and entered by Judge Joyce Hens
Green in *In re Guantanamo Cases*, 344 F. Supp. 174 (D.D.C. 2004), following intense
negotiation and litigation over its terms.  *See Adem v. Bush*, 425 F. Supp. 2d 7, 10-14 (D.D.C.
2006) (reviewing history of negotiation and entry of Protective Order), *aff'd*, No. 05-723, slip
op., 2006 WL 1193853 (D.D.C. April 28, 2006).  It has since been entered in the vast majority of
Guantanamo *habeas* cases pending before the District Court.

limited and that Respondents were obliged to follow the Protective Order in cases in which it had been entered. In doing so, I noted that if Petitioners' counsel did not submit evidence of their authority to represent a particular detainee within 10 days of their second visit, that Respondents' motion to dismiss for lack of next friend standing would then become ripe.[5] *Id.*

Based on the reasoning in *Adem*, I ordered the Government to grant detainees access to their counsel in multiple other cases with pending next friend challenges, including several of the above-captioned cases. *See Kabir v. Bush*, 05-1704 (D.D.C. May 11, 2006); *Said v. Bush*, 05-2384 (D.D.C. May 23, 2006); *Kiyemba v. Bush*, 05-1509 (D.D.C. June 29, 2006); *Zalita v. Bush*, 05-1220 (D.D.C. July 21, 2006); *Alkhemisi v. Bush*, 05-1983 (D.D.C. Jul 21, 2006); *Qasim v. Bush*, 05-1779 (D.D.C. August 2, 2006); *Thabid v. Bush*, 05-2398 (D.D.C. August 2, 2006). Every District Court Judge to reach the issue has upheld this interpretation of the Protective Order. *See Razakah v. Bush*, 05-2370 (D.D.C. May 18, 2006) (EGS) (order granting motion for access to counsel, notwithstanding Respondents' pending challenge to Petitioner's next friend standing, based on substantially the same reasons articulated in *Adem v. Bush*); *see also Mohammon v. Bush*, No. 05-2386, Order at 4 n.5 (D.D.C. June 27, 2006) (RBW) (rejecting government's argument that allegedly defective next friend standing strips court of authority to grant access to counsel); *Adem v. Bush*, No. 05-723, 2006 WL 1193853 at *3-7 (D.D.C. April 28, 2006) (RWR) (denying motion for reconsideration and affirming order granting access to counsel); *Thabid v. Bush*, 05-2398 (D.D.C. August 17, 2006) (ESH) (denying Respondents'

_____

[5]It is by no means certain that Respondents motion will become moot. Some detainees may be physically or mentally incapable of authorizing counsel to represent them, perhaps due to participation in a hunger strike or mental instability arising from their prolonged detention. Alternatively, some detainees may simply refuse to authorize counsel to represent them.

motion for order to show cause why case should not be dismissed for lack of proper next friend standing and affirming order granting access to counsel); *Kabir v. Bush*, 05-1704 (D.D.C. August 25, 2006) (JR) (affirming order granting access to counsel); *Kiyemba v. Bush*, 05-1509 (D.D.C. August 7, 2006) (RMU) (same).

II.    *Jurisdiction*

The question of jurisdiction in the Guantanamo *habeas* cases has been an ongoing one. From the beginning, Respondents have argued that the Court lacks jurisdiction to hear these cases. Twice now, the Supreme Court has rejected Respondents' claim that the federal courts are off limits to detainees seeking to challenge the lawfulness of their detention. *See Rasul v. Bush*, 542 U.S. 466, 483-84 (2004) (finding district court had jurisdiction to hear detainees' challenges to the legality of their detention); *Hamdan v. Rumsfeld*, 126 S.Ct. 2749, 2762-69 (2006) (rejecting government's argument that Detainee Treatment Act of 2005 ("DTA") retroactively divested federal courts of jurisdiction to hear detainees' *habeas* petitions).

Following the Supreme Court's ruling in *Hamdan* that the jurisdiction-stripping provisions of the DTA do not apply retroactively, Respondents argued that jurisdiction over Petitioners' *habeas* petition was nonetheless barred by the DTA's separate exclusive review provisions. The DTA vests "the District of Columbia Circuit Court of Appeals with exclusive authority to review the validity of any final decision of a Combatant Status Review Tribunal [CSRT] that an alien is properly detained as an enemy combatant." Detainee Treatment Act of 2005, Pub. L. 109-148, § 1005(e)(2), 119 Stat. 2739, 2741-42. In granting access to counsel pursuant to the Protective Order, I found that the Court did not need to reach the question of whether a *habeas* petition challenging the very legitimacy of the CSRTs and Petitioners'

continued detention – questions far beyond the narrow confines of Section 1005(e)(2) – would

nevertheless be bundled into the Circuit's exclusive jurisdiction when paired with a challenge to

a final decision of a CSRT.  *See Hamdan*, 126 S. Ct. at 2769 (finding "nothing absurd about a

scheme" that creates two separate systems of review for challenges to detainees' confinement);

*id.* at 2815 (Scalia, J., dissenting) (criticizing majority for creating a "dual-review mechanism"

for *habeas* petitions pending on the date of the DTA's enactment).  The question of when, and

under what circumstances the existing Protective Order permits Petitioners to meet with their

lawyers has no bearing on the question of which Court has jurisdiction to review the merits of

Petitioners' challenge to their detention.[6]  *See Adem*, No. 05-723, slip op. at 16-17 (D.D.C. April

28, 2006) (RWR); *see also Nasrullah v. Bush*, 05-891 (D.D.C. June 12, 2006) (RBW) (rejecting

government's argument that the Detainee Treatment Act divested District Court of its authority

to appoint counsel to represent Guantanamo Bay detainees); *Al Salami v. Bush*, 05-2452 (D.D.C.

April 13, 2006) (PLF) ("[d]etainees' right to meet with counsel under the Protective Order is

independent of the (still-unresolved) question of the Court's jurisdiction to rule on their *habeas*

petitions").

      "[A] protective order, like any ongoing injunction, is always subject to the inherent power

of the district court."  *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993); *see also

Armstrong v. Executive Office of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (recognizing

courts' "inherent power to enforce compliance with their lawful orders"); *Broderick v.

Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006) (same); *cf. Gambale v. Deutsche Bank, AG*,

---

      [6]Presumably, counsel for Petitioners would also represent them in any proceedings before the D.C. Circuit.  Thus, the need to resolve questions regarding the logistics of counsel access remains an issue.

6

377 F.3d 133, 140-41 (2d Cir. 2004) (recognizing court's jurisdiction to modify protective orders

that remain in effect, even after dismissal of the underlying litigation).  The Protective Order

remains in effect in all of the Guantanamo *habeas* cases in which it was entered.  Counsel for

other detainees continue to visit their clients according to its terms.  Indeed, under no

circumstances would DoD permit counsel to visit detainees in Guantanamo Bay without

counsel's signed agreement to abide by the Protective Order.  The acknowledgments signed by

*habeas* counsel agreeing to abide by the terms of the Protective Order remain in effect and

counsel remains subject to this District Court's contempt power.

Moreover, it is well-settled law that "a federal court always has jurisdiction to determine

its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002).  Petitioners are entitled to

meet with their counsel in order to litigate that very question.[7]  It is also well-settled that until

---

[7]On September 28, 2006, Congress again passed legislation attempting to strip federal courts of jurisdiction to consider petitions for writs of *habeas corpus* filed by any alien designated as an enemy combatant, regardless of whether they are held inside or outside the territorial United States.  *See* Military Commissions Act of 2006, S. 3930, 109th Cong., 2d Sess. § 7 (2006).  As of the date of this Report and Recommendation, the legislation has not been signed by the President.  Once the bill becomes law, its constitutionality will undoubtedly be the subject of intense litigation.  *See* Charles Babington & Jonathan Weisman, *Senate Approves Detainee Bill Backed by Bush: Constitutional Challenges Predicted*, Washington Post, September 29, 2006, at A1 (quoting Senator Arlen Specter describing the habeas provisions as "'patently unconstitutional on [their] face'" but explaining his support for the bill because "'the court will clean it up' by striking the habeas provisions").  The outcome of any challenge to the constitutionality of the legislation is by no means clear.  The Supreme Court has assiduously avoided reaching Suspension Clause questions, but has also repeatedly rejected Congressional attempts to repeal habeas jurisdiction under the canon of constitutional avoidance.  In *INS v. St. Cyr*, 533 U.S. 289 (2001), the Supreme Court was faced with a challenge to jurisdiction stripping provisions in the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA).  Despite the fact that the relevant section was entitled "Elimination of Custody Review by Habeas Corpus," *id.* at 308, the Court construed the statutes as not repealing habeas jurisdiction in part to avoid the "serious Suspension Clause issues [that] would [otherwise] be presented[,]" *id.* at 305.  The Supreme Court explained that "at the absolute minimum, the Suspension Clause protects the writ

such time as jurisdiction is determined not to exist, the District Court has the authority to issue

such orders as necessary to preserve its own jurisdiction and to maintain the status quo.  *See*

*United States v. United Mine Workers of America*, 330 U.S. 258, 290-93 (1947).  For example, it

is unknown whether Respondents are presently seeking to transfer any of the Petitioners to the

control or custody of another government, thereby divesting this Court of jurisdiction.  Granting

Petitioners access to counsel guards against inadvertent or inappropriate loss of the Court's

jurisdiction by ensuring that counsel is available to raise these types of issues with the Court.

## Conclusion

In light of the fact that Respondents' motion is already moot in at least two of the above-

captioned cases, and may become moot in the remaining cases, the undersigned recommends that

the Court, Oberdorfer, J., discharge Petitioners' obligations to show cause why their cases should

not be dismissed for lack of proper next friend standing and deny Respondents' motion without

prejudice to renew if any Petitioner's fails to provide evidence of their authority to represent a

detainee within ten (10) days of their second visit.

## Review by the District Court

The parties are hereby advised that under the provisions of Local Rule 72.3 (b) of the

United States District Court for the District of Columbia, any party who objects to the Report and

Recommendation must file a written objection thereto with the Clerk of this Court within 10 days

---

as it existed in 1789."  *Id.* at 301 (internal citations omitted).  "At its historical core, the writ of
habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in
that context that its protections have been strongest."  *Id.*   Again in *Hamdan*, the Supreme Court
declined to decide the Suspension Clause question, citing to the same concerns it had previously
expressed in *St. Cyr*.  *See Hamdan*, 126 S.Ct. at 2769 n.15.  Thus, any challenge to the
constitutionality of Congress' most recent attempt to repeal *habeas* jurisdiction in these cases
will undoubtedly find its way to the Supreme Court yet again.

8

of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections.  The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation.  *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).  If this Report and Recommendation is served on the parties by mail, calculation of the time period for filing written objections is as follows: 10 business days (excluding weekends and holidays) plus three calendar days (including weekends and holidays).  *See CNPq-Conselho Nacional De Desenvolvimento Cientifico E Technological v. Inter-Trade, Inc.,* 50 F.3d 56, 58 (D.C. Cir. 1995) (*per curiam*).

Dated: October _6th_, 2006                    _____/s/_____
                                                          ALAN KAY
                                                          UNITED STATES MAGISTRATE JUDGE

9