IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| HAMID AL RAZAK, | ) | |
| | ) | |
| *Petitioner,* | ) | |
| | ) | Civil Action No. 05-CV-1601 (GK) |
| v. | ) | |
| | ) | |
| GEORGE W. BUSH, *et al.,* | ) | |
| | ) | |
| *Respondents*. | ) | |
| | ) | |

**PETITIONERS' MEMORANDUM IN OPPOSITION
TO RESPONDENTS' OBJECTION TO MAGISTRATE JUDGE'S OCTOBER
REPORT AND RECOMMENDATION DENYING THE GOVERNMENT'S
MOTION TO DISMISS FOR LACK OF NEXT FRIEND STANDING**

HAMID AL RAZAK is being held by the United States Government at Guantanamo Bay Naval Station ("Guantanamo Bay"). Petitioner hereby files his memorandum in opposition to Respondents' October 26, 2006 Objections to Magistrate Judge Kay's October 6, 2006 Report and Recommendation. ("Resp's Objection," Doct. 37). Magistrate Judge Alan Kay's Report and Recommendation should stand, because the government's papers merely recycle arguments that this Court and other courts considering the matter have already rejected.

**I.    INTRODUCTION**

The original Petition for Habeas Corpus was filed in this action fifteen months ago, by and through petitioner's Next Friend, BISHER AL RAWI. Since that time, the government has waged a relentless, strenuous, campaign to block counsel from visiting, and even communicating with, petitioner. The government has insisted, and still insists,

1

that counsel should not be allowed to communicate with the prisoner because he has provided insufficient evidence of his authority to represent him.

The "Next Friend" issue, though fully briefed in this court (Hon. Gladdys Kessler), was transferred, along with other "Next Friend" challenges before other judges, on 2 November, 2005, to Magistrate Judge Kay for report and recommendation pursuant to LCvR 72.2(a).

While the matter was under consideration by Magistrate Kay, Petitioner herein moved this Court (Hon. Gladdys Kessler) for a Protective Order and a written, factual "Return" and ancillary relief, which was granted on 19 September, 2006.  This court not only granted the Protective Order but Ordered Respondents to furnish Petitioner with a statement whether Hamid Al Razak was indeed incarcerated in Guantanamo Bay (with which Respondents have complied) and "a written explanation as to why they are continuing to detain Petitioner in the Guantanamo Bay detention facility, including but not limited to a declassified Factual Return no later than December 15, 2006."

On October 6, 2006, Magistrate Judge Kay filed a Report and Recommendation that the government's motion to dismiss be denied without prejudice and that his previous Orders in this and other "next friend" cases should stand for the reasons cited in them. The government has objected.

**II.  MAGISTRATE JUDGE KAY'S REPORT AND RECOMMENDATION WAS BASED ON ORDERS THAT HAVE BEEN REVIEWED AND UPHELD IN EVERY CASE IN WHICH THEY WERE ENTERED**

Magistrate Judge Kay's Report was based largely on the facts and reasoning set forth in his Order for counsel access issued in the case of *Adem v. Bush*, 425 F. Supp. 2nd 7 (D.D.C. 2006), *aff'd*, No. 05-723, 2006 WL 1193853 at *3-7 (D.D.C. April 28,

2

2006) and Orders issued in this and other "next friend" cases referred to him by Judges Huvelle, Collyer, Urbina, Kessler, Bates, and Robertson, J. (*See*,Report at 4-5.) The motions to compel counsel access filed in those cases presented Magistrate Judge Kay with a straightforward issue of interpretation of the Protective Order. The Protective Order is in the nature of a contract between counsel for detainees and counsel for the government. No party has claimed that the order is ambiguous. It was Magistrate Judge Kay's responsibility, therefore, to construe the order from its plain language in light of the circumstances surrounding its entry. See *Geller v. Branic Intern. Realty Corp.*, 212 F.3d 734, 737 (2nd Cir. 2000) (applying contract construction principles to interpretation of protective order).

The dispute referred to Magistrate Judge Kay posed the sole issue of the proper interpretation of a specific term: "evidence of [counsel's] authority to represent the detainee." The disputed term is found in two adjacent paragraphs of the Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba:

> C.   Verification of Representation
>
>     1.   Prior to being permitted access to detainee, counsel must provide DoD with a Notification of Representation. This Notification must include the counsel's licensing information, business and email addresses and phone number, as well as the name of the detainee being represented by the counsel. Additionally, counsel shall provide evidence of his or her authority to represent the detainee.
>
>     2.   Counsel shall provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with the detainee. The Court recognizes that counsel may not be in a position to present such evidence after the initial meeting with a detainee. Counsel for detainees and counsel for respondents shall cooperate to the fullest extent possible to reach a reasonable agreement on the number of counsel visits allowed.

> Should counsel for a detainee believe that the government is unreasonably limiting the number of visits with a detainee, counsel may petition the Court at the appropriate time for relief.

The government argued that the evidence of authority to represent the detainee (as set out in the last sentence of paragraph 1) must be provided "prior to being permitted access to detainee." Magistrate Judge Kay rejected this argument. He examined the language and concluded that only the "Notification of Representation" must be provided prior to being permitted access to detainee. The timing of "evidence of authority" is governed by the second paragraph.

The "plain terms" of the second paragraph, according to Magistrate Judge Kay, "allow counsel a maximum of two visits with a detainee, plus ten days, before counsel must submit evidence of his or her authority to represent the detainee." Order at 8. Otherwise, the second paragraph is rendered meaningless.

Magistrate Judge Kay also rejected the Government's attempt to create a distinction between direct *habeas* petitions and those submitted through a next friend. The Protective Order on its face refers to a single requirement of evidence of authority, and the "Court cannot infer a separate two-step requirement applicable solely to 'next friend' petitions out of thin air." Order at 8. In the context of the Guantanamo *habeas* cases:

> the legal fiction of a "next friend" became largely irrelevant except as a mechanism for identifying those detainees who seek to challenge their detention in the first instance. . . . In those *habeas* cases filed since the creation and entry of the Protective Order, the detainees who initiate a *habeas* petition on behalf of a fellow detainee generally do not seek to serve procedurally as a "next friend" in the traditional sense, but are simply passing on another detainee's request for help, a fact that can be confirmed once counsel meets directly with the detainee.
> Order at 8-9.

4

In filing its Objection, the government merely recycles arguments that this and other reviewing courts have already rejected, and fails to make any persuasive arguments that the Report and Recommendation is contrary to the law or clearly erroneous. Magistrate Judge Kay has considered and rejected all of the arguments asserted by Respondents, and Respondents have pointed to no new case law or material facts that might upset the reasoning of the Order. His Orders have been affirmed in every case. Moreover, the government's jurisdiction arguments are unavailing, as neither the Detainee Treatment Act nor the newly-signed Military Commissions Act divest this Court of its ability to enforce the terms of a Protective Order previously entered.

### III.    ARGUMENT

#### A.    The Detainee Treatment Act and the Military Commissions Act are irrelevant to this action

The Government objects to Magistrate Judge Kay's Report and Recommendation on grounds that he lacked jurisdiction to rule on the motion to compel client access by virtue of the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680. ("DTA"). Respondents twice previously raised this argument to Magistrate Judge Kay, who correctly noted that the petitioners' motion for an order compelling access to counsel was made to enforce the Protective Order, and did not implicate any of the jurisdictional questions currently pending in the D.C. Circuit and the Supreme Court. (Order at 11.) A Protective Order, he noted, "like any ongoing injunction, is always subject to the inherent power of the District Court. . . . It would be untenable for the District Court to be put in a position where it is powerless to enforce its own protective order, presently in effect and over which it has continuing control." ) Order at 12, internal citations omitted.) Other judges considering this question agree. *See, e.g., Al Salami v. Bush*, Civil Action No. 05-2452 (PLF) (Order, April 13, 2006)( Central to the Protective Orders

are their provisions for access to counsel. Detainees' right to meet with counsel under the Protective Order is independent of the (still-unresolved) question of the Court's jurisdiction to rule on their habeas petitions. Friedman, J.). *See also, Kiyemba v. Bush*, 2006 WL 2255736, at *2 (D.D.C. August 7, 2006)(upholding Magistrate Judge Kay's Order and stating that "enforcing the terms of the protective order. . .does not pose the danger of exceeding the court's jurisdiction, even if it is ultimately determined that this court does not have jurisdiction to determine the merits of a petition for habeas corpus relief."); *Said v. Bush*, Civ. No. 05-2384 (D.D.C. May 26, 2006) (minute order denying Respondents' motion for stay and reconsideration arguing in part that the Magistrate Judge lacks jurisdiction to facilitate detainees' access to counsel); *Razakah v. Bush*, Civ. No. 05-2370, slip. op. at 4 (D.D.C. May 18, 2006) (holding that "enforcing the terms of the protective order does not pose a danger of exceeding the Court's jurisdiction"); and *Mohammon v. Bush*, Civ. No. 05-2386, slip. op. at 2 (June 27, 2006) (citing respondents' willingness to consent to entry of the Protective Order in cases arising after passage of the DTA as evidence of court's power to issue orders affording detainees access to their counsel).

The government also argues that that courts lack jurisdiction to consider habeas petitions and "other action" relating to detainees under the Military Commissions Act of 2006, Pub. L. No. 109-366 (2006)(the "MCA"). The above-cited decisions are equally applicable to the MCA, as it, in relevant part, incorporates by reference the same jurisdiction-restricting language of the DTA and extends it to pending cases. Whereas both the DTA and the MCA seek to deprive the courts of jurisdiction over the merits of certain habeas corpus petitions, neither denies detainees access to counsel. Furthermore, the Court of Appeals for the District of Columbia Circuit has ordered supplemental briefing on the constitutionality of the MCA, and the detainees are entitled to representation as this Court and the Court of Appeals exercise their jurisdiction to consider

whether the MCA applies. It is therefore inappropriate to avoid any decision in this matter pending further briefing regarding the constitutionality of the MCA.

Even after the passage of the DTA and the MCA, counsel visits to Guantanamo have continued. The provisions of the Protective Order continue to be enforced and applied to the everyday issues of counsel access to detainees. Further, the Protective Order has been entered after the two Acts were passed, in numerous other detainee cases. Clearly, this Court, the government, and detainee counsel alike have embraced the continuing authority of the Protective Order. The continuing application of the Order requires compliance, interpretation, and, when necessary, enforcement of its terms by the court that issued it.

> **B.    The Magistrate Judge's interpretation of the Protective Order is neither clearly erroneous nor contrary to law.**

Respondents next argue that the Magistrate Judge's interpretation of the Protective Order is contrary to the language of the text, its history, and its context. Resps' Motion at 22 *et seq*. This argument was definitively disposed of in the previously-cited case of *Adem v. Bush*, No. 05-723, slip op. (D.D.C. April 28, 2006)(RWR). In the *Adem* case, Magistrate Judge Kay first interpreted the "evidence of counsel authority" term, using the same reasoning as he did in the instant case. The government's subsequent motion to reconsider was soundly rejected by Judge Richard Roberts. In an 18-page ruling upholding Magistrate Judge Kay's Order ("Roberts Opinion"), Judge Roberts held that Magistrate Judge Kay's conclusions, based on the text's plain language and normal rules of [textual] construction, were "well-supported in fact and law and [are] not clearly erroneous or contrary to law." (Roberts Opinion at 11.)

7

Judge Roberts explained that, not only does the plain language of the Protective Order not require a showing of direct evidence of authorization to represent a detainee as a prerequisite to an in-person meeting, but "[r]equiring a Guantanamo detainee to identify a specific lawyer from among all the volunteer lawyers – most of whom are unknown to the detainee before a meeting – is a meaningless exercise. It would be unconscionable to tether a detainee's access to counsel to such an unworkable prerequisite." *Adem, supra.* at 16.

In reviewing the Government's arguments that the history and context of the text supports their interpretation of the Protective Order (the same arguments made in this case now before the Court)(Resps' Motion at 22-27), Judge Roberts found them "unavailing" where the text affords a straightforward interpretation. Roberts Opinion at 13 (citations omitted). He noted that, contrary to the Government's assertions, "the protective order in [the *Adem*] case is not the product of a negotiated agreement between the parties to *this [Adem]* action. Only the respondents, not the petitioners, in this case were privy to and involved in the negotiation of the Revised Access Procedures that were entered as part of Judge Green's protective order." Accordingly, the intention of the parties in that case could not control an interpretation of the Protective Order at issue. (Roberts Order at 13.)

This Court also denied a Motion to Reconsider Magistrate Judge Kay's May 25, 2006 Order, and specifically cited the *Adem* case (and others cited herein), stating: "To the extent that those decisions address the jurisdictional and interpretive issues presented in respondents' motion, the court adopts the reasoning and outcome of those

cases." (Robertson Order at 1.) Accordingly, this Court is respectfully urged to adopt the Report and Recommendation.

    **C.**    **The Government has over-dramatized the effect of the Order, improperly characterizing it as "compelled access to wartime detainees in a military facility."**

Our government has never before done what it has allegedly done in these Guantanamo cases: imprisoned people without charging them with any wrongdoing; held them in physical isolation; deliberately impeded their access to counsel; subjected them to physical abuse and other mistreatment; and refused even to disclose their identities to the outside world so that legal, humanitarian, and medical assistance could be provided. Now, even though counsel has been secured and petitions filed, the government seeks to prevent these cases from proceeding.

The government bitterly complains that the Order forces it "to provide direct, privileged access to wartime detainees in a military detention facility by counsel merely purporting to represent a detainee, without any showing by counsel of proof of appropriate authority to represent the detainee directly or through a next friend meeting appropriate standing requirements." Resps' Objection at 32. This is untrue.

First, the Report and Recommendation, if adopted, would merely continue existing practice. The government previously complied with the Protective Order by allowing counsel – even counsel who brought cases by and through a next friend – at least two visits before insisting upon written evidence of authority. Second, all counsel for the detainees who have authority to visit their clients at Guantanamo Bay, who are providing services on a *pro bono* basis and expending significant sums for travel and translators, have security clearance and are bound by the terms of the Protective Order. The risk of unauthorized access to the detainees or other security risks is non-existent.

9

The real issue is the Government's concerted attempts to keep these detainees from their lawyer.

These prisoners have been detained incommunicado without charge for perhaps four (4) years, with no access each other, to family or friends. They are entitled to meet with their lawyer. Permitting authorized counsel to visit these men will not implicate "significant separation of powers concerns." Resps' Motion at 34.  Allowing a counsel visit amounts to nothing more than the routine enforcement of a valid Protective Order, and the Magistrate Judge's Report and Recommendation allowing counsel access should be adopted.

**CONCLUSION**

The Government must be stopped from its attempt to obstruct petitioners' access to the courts by challenging their Next Friend's status and denying meaningful contact between the Petitioner and his counsel.

Dated: November 16, 2006                                COUNSEL FOR PETITIONER:

Of Counsel:

Barbara Olshansky
Deputy Director
CENTER FOR CONSTITUTIONAL
RIGHTS                                                              Alan N. Sussman
666 Broadway, 7th Floor                                 Post Office Box 379
New York, NY 10012                                       Bearsville, New York  12409
Telephone:    (212) 614-6439                          Telephone: (845) 679-6927
                                                                            Facsimile:   (845) 679-6927

**CERTIFICATE OF SERVICE**

I hereby certify that true and correct copies of the Petitioner's Memorandum in Opposition To Respondents' Objection to Magistrate Judge's October Report and Recommendation Denying the Government's Motion to Dismiss for Lack of Next Friend Standing was served upon the following person by e-mail on the 21st day of November, 2006:

Preeya M. Noronha
Trial Attorney
Civil Division
Federal Programs Branch
20 Massachusetts Ave., NW
Washington, D.C. 20530
E-Mail:  preeya.noronha@usdoj.gov

And upon the following person by Certified Mail, Return Receipt Requested:

Alberto R. Gonzales
Attorney General of United States
U.S. Department of Justice
Robert F. Kennedy Building, Room 5111
Tenth Street & Constitution Ave., NW
Washington, D.C. 20530

_____
ALAN N. SUSSMAN