IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HAMID AL RAZAK, *et al.*, | : |
| Petitioner/Plaintiffs, | : |
| v. | : |
| GEORGE W. BUSH, *et al.* | : |
| Respondents/Defendants. | : |

Case No. 1:05-CV-1601 (GK)

**PETITIONER'S MOTION TO STAY AND ABEY THIS ACTION,
OR IN THE ALTERNATIVE, TRANSFER IT TO THE COURT OF APPEALS**

For the reasons set forth in the accompanying Brief, Petitioner hereby moves this Honorable Court for the entry of an Order staying and abeying this action pending Petitioner's exhaustion of his remedies under the Detainee Treatment Act of 2005 ("DTA"), and a final judicial determination of the constitutional adequacy of those remedies. In the alternative, Petitioner asks the Court either to transfer this case to the United States Court of Appeals for the District of Columbia Circuit subject to the September 19, 2006 Protective Order and September 19, 2006 Order for Factual Return, or, should the Court grant Respondents' pending Motion to Dismiss, stay the dismissal of this case until the Court of Appeals rules on the issues addressed by that Protective Order

and Order for Factual Return in the DTA proceedings shortly to be filed in that court on

Petitioner's behalf.

Respectfully submitted,

Rebecca P. Dick
D.C. Bar No. 463197
Carolyn M. Welshhans
D.C. Bar No. 489120
DECHERT LLP
1775 I Street, N.W.
Washington, D.C.  20006
(202) 261-3300 (Tel.)
(202) 261-3333 (Fax)

George G. Gordon
Peter M. Ryan
Juliet Sarkessian
Cira Centre
2929 Arch Street
Philadelphia, PA  19104-2808
(215) 994-4000 (Tel.)

Daniel C. Malone
30 Rockefeller Plaza
New York, NY  10112
(212) 698-3500 (Tel.)

Counsel for Petitioner

May 3, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HAMID AL RAZAK, *et al.*, | : | |
| | : | |
| *Petitioners/Plaintiffs*, | : | |
| | : | Case No. 1:05-CV-1601 (GK) |
| v. | : | |
| | : | |
| GEORGE W. BUSH, *et al.*, | : | |
| | : | |
| *Respondents/Defendants.* | : | |
| | : | |

PETITIONER'S BRIEF IN OPPOSITION
TO RESPONDENTS' MOTION TO DISMISS AND
IN SUPPORT OF PETITIONER'S MOTION TO STAY AND ABEY THIS ACTION OR,
IN THE ALTERNATIVE, TRANSFER IT TO THE COURT OF APPEALS

Petitioner through his attorneys respectfully asks that this Court, in the interests of justice, stay the dismissal of this habeas action and hold it in abeyance pending Petitioner's exhaustion of his remedies under the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat. 2680 ("DTA"), and a final judgment regarding the constitutional sufficiency of the DTA process as a substitute for this habeas action. In the alternative, Petitioner asks the Court either to transfer this case to the D.C. Circuit Court of Appeals, along with the September 19, 2006 Protective Order ("the Protective Order"), and the September 19, 2006, case management order requiring the production of factual returns ("the Case Management Order"), or stay the dismissal of this case until the D.C. Circuit Court of Appeals rules on the Protective Order and case management matters addressed by those orders in DTA proceedings to be filed in that court on behalf of Petitioner on or before June 1, 2007. Respondents oppose this motion.

Respondents' motion to dismiss this action is an effort to thwart the expressed interest of a majority of the justices of the Supreme Court in reviewing the question of subject-matter

jurisdiction in Guantanamo detainee habeas actions such as this. Among five Justices, only the timing of that review was in dispute. Thus, this Court retains jurisdiction to stay and abey this action until the DTA record required by Justices Stevens and Kennedy is developed. Stay-and-abey is a well-established procedure for maintaining the viability of a habeas action while preliminary steps necessary to its disposition are completed.

If, on the other hand, Respondents' motion to dismiss were granted, and if the Protective Order and the Case Management Order entered by this Court were dismissed along with the action itself, Petitioner's ability effectively to litigate a habeas petition could be irretrievably damaged. Loss of the Protective Order could mean that Petitioner's relationships with his attorneys, developed over long distances and despite significant language barriers and cultural differences, would be first interrupted and then drastically curtailed, probably never to be fully restored. Of equal concern, loss of the Protective Order and the Case Management Order would jeopardize the survival of discoverable evidence. A subsequent recognition of habeas jurisdiction by the Supreme Court would then have little practical meaning for Petitioner.

## I.     A Majority of the Supreme Court Anticipates Review of the Question of Habeas Jurisdiction

### A.     *Five Justices Expressed Interest in Considering Habeas Jurisdiction*

A majority of the Supreme Court expects to consider the habeas jurisdictional issues raised in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007) ("*Boumediene I*"). Justices Breyer, Souter, and Ginsburg wanted to undertake this now. *Boumediene v. Bush*, No. 06-1195 (Breyer, J., joined by Souter and Ginsburg, JJ., dissenting) Slip Op. at 1 ("Dissenting Op."). They voted to grant certiorari, writing that the questions raised by the petitioners "deserve this Court's immediate attention." Dissenting Op., Slip Op. at 1.

Justices Stevens and Kennedy voted to deny certiorari "at this time," pending development of what they consider a necessary record for appropriate evaluation of the jurisdictional issue. *Boumediene v. Bush*, No. 06-1195, Statement of JJ. Stevens and Kennedy, Slip Op. at 1 ("Statement of JJ. Stevens and Kennedy") (April 2, 2007) (collectively, *Boumediene II*). Dick Decl. Ex. A. They wrote that the Supreme Court traditionally has required "the exhaustion of available remedies as *a precondition to accepting jurisdiction over applications for the writ of habeas corpus.*" *Id.* (emphasis supplied) They concluded that the habeas jurisdictional question could not properly be review without the benefit of a DTA record.

Lest there be any doubt about their intentions, JJ. Stevens and Kennedy also stated that, should Respondents

> take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to *ensure that the office and purposes of the writ of habeas corpus are not compromised.*'

*Id.* at 2, *quoting Padilla v. Hanft*, 547 U.S. 1062, 1064 (2006) (Kennedy, J., concurring in denial of certiorari) (emphasis supplied). These justices want to ensure that habeas actions remain viable so that if DTA remedies are found wanting, Petitioner retains the ability to seek relief. Dismissal of this action would compromise "the office and purposes of the writ," in contravention of these directions.

B.    *The Right to Habeas Corpus is Central to Our Legal Regime*

Habeas is at the heart of our system of laws, adopted by the framers from centuries-old English precedent and incorporated in Article I of the Constitution. The noted English jurist, William Blackstone, wrote in the 18th century that "[t]he great and efficacious writ in all manner of illegal confinement, is that of *habeas corpus ad subjiciendum*; . . . This is a high prerogative writ, . . . running into all parts of the king's dominions . . . " 3 Blackstone Commentaries *131.

That principle has continued unbroken in the United States for over two centuries. The Supreme

Court wrote in 2004:

> Executive imprisonment has been considered oppressive and lawless since John, at Runnymeade, pledged that no free man should be imprisoned, dispossessed, outlawed, or exiled save by the judgment of his peers or by the law of the land. The judges of England developed the writ of habeas corpus largely to preserve these immunities from executive restraint.

*Rasul v. Bush*, 542 U.S. 466 (2004), *quoting Shaughnessy v. United States ex rel. Mezei*, 345

U.S. 206, 218-19 (1953) (dissent). In *Rasul*, the Supreme Court also wrote, "[a]t its historical

core, the writ of habeas corpus has served as a means of reviewing the legality of Executive

detention, and it is in this context that its protections have been strongest." *Id.* at 474, *quoting*

*INS v. St. Cyr*, 533 U.S. 289, 301 (2001). The Great Writ is particularly appropriate as a means

for reviewing Petitioner's unique situation, as it is a flexible remedy that over the centuries has

repeatedly been adapted as appropriate to changing circumstances.

## II.    The Protective and Case Management Order Are Necessary to Ensure That "the Office and Purposes of the Writ . . . Are Not Compromised" While the DTA Record Needed for Review of Jurisdiction Is Developed

The dismissal of this District Court proceeding and loss of the Protective Order and Case

Management Order that govern it would constitute exactly the type of prejudice to Petitioner that

Justices Kennedy and Stevens, implicitly supported by the three dissenters from the denial of

certiorari, instructed the courts to prevent. *Boumediene II*. Respondents seek dismissal of the

Orders that enable Petitioner to meet with and have privileged communications with his counsel

and maintain counsel's current level of access to Petitioner's file. Loss of these Orders would

render any future Supreme Court consideration of habeas jurisdiction meaningless by ensuring

that, if and when that review occurs, evidence and attorney-client relationships necessary to

effective habeas litigation will already have been lost or destroyed. This Court should not countenance this direct assault on the "office and purposes" of the writ.

    A.    *The Protective Order is Essential to Preservation of the Attorney-Client Relationships Necessary to a Future Habeas Proceeding*

Respondents suggest that the Protective Order they negotiated in this Court should be replaced by a new order, to be issued by the Court of Appeals in the DTA proceedings. Resp. Brief in support of its Motion to Dismiss at 9. Respondents' proposed replacement protective order ("proposed protective order") would significantly restrict Petitioner's access to his counsel, Dick Decl. Ex. B, although the Order in this action has worked well during the nearly three years it has governed the Guantanamo habeas cases. Compliance has been excellent: Respondents allege only rare infractions by counsel, in the course of many visits by counsel to Guantanamo. None of those reports involved counsel for Petitioner. More importantly, the Order has been effective: Respondents fail to identify a single instance of trouble at Guantanamo resulting from any provision of the Protective Order.

This admirable record reflects habeas counsel's good faith in honoring the Protective Order, as well as the effective remedies the Order provides for any violations. Respondents have not hesitated to exercise these remedies to the fullest whenever they wished, on occasion banning certain counsel and translators from Guantanamo altogether.

Dismissal of the Protective Order in this action would have immediate, tangible consequences for Petitioner.[1] On information and belief, Respondents have taken the position in other Guantanamo cases that after a district court habeas action is dismissed and until a new protective order is entered by the Court of Appeals, detainees must either accept as already

---

[1] The proposed protective order would also severely prejudice Petitioner's ability to litigate his DTA appeals.

adopted the significant new restrictions on attorney-client communications that Respondents

seek to impose – even though these would rapidly degrade attorney-client relationships – or they

will be prevented from having *any* meetings with their attorneys.  The trust between Petitioner

and his counsel, gradually developed through letters and visits over the past year, would be

dismantled if the already severe limits on communications were tightened.

The new procedures would drastically curtail Petitioner's in-person meetings with

counsel and end privileged written communications between them.  Respondents seek to limit a

Petitioner to only four visits with counsel no matter how many years he remains at Guantanamo.

Proposed protective order, Part Two, ¶ 9.C., at 29.  Without the Protective Order in this case,

counsel would immediately have to curtail the regularity of their already infrequent visits, so as

not to reach the 4-meetings-in-a-lifetime limit too quickly.

Further, counsel would be unable to write privileged correspondence to Petitioner to

explain why they were not visiting as often as necessary and as promised.  Counsel would

attempt to send unprivileged letters through the channels for non-legal mail to Petitioner, but

since senders are not ordinarily notified when non-legal mail is blocked or redacted during the

security review at Guantanamo, counsel would not know if Petitioner had received the letters.

These restrictions would undermine Petitioner's confidence in his counsel, confidence

that is unlikely to be recovered even if the existing rules about communications are eventually

restored.  Without an effective attorney-client relationship, a habeas action could not later be

effectively pursued.

Respondents appear eager to cut Petitioner off from his counsel at the earliest

opportunity.  On information and belief, some habeas attorneys' visits to Guantanamo have

recently been approved subject to Respondents' express condition that this Court's Protective

Order "remains extant." Moreover, other counsel have received no response to long-outstanding requests for visits.

Petitioner seeks to ensure that Petitioner retains access to counsel so as to "ensure that the offices and purposes" of the writ are "not compromised."[2] The Protective Order should remain in place while further proceedings in this habeas action are stayed.

B.     *The Protective and Case Management Orders Are Essential to Preserving All of the Potentially Discoverable Evidence and Current Levels of Access to Detainees' Files, Necessary to a Meaningful Future Habeas Proceeding*

Loss of the Protective Order and Case Management Order would also risk permanent prejudice to Petitioner's ability to gather evidence in support of a revived habeas action. If the Protective Order does not remain in effect, counsel's ability later to gather evidence will be irreversibly damaged in several ways. First, counsel's ability to discuss with Petitioner the collection of evidence of innocence from his home country would be interrupted, as described, and possibly delayed until a time when such evidence no longer exists.

Dismissal of the Protective Order would also jeopardize the preservation of evidence otherwise discoverable in a subsequent habeas action. Included in the Protective Order at Respondents' insistence is a provision authorizing them to destroy their "protected" records, and to require counsel to do the same, once this action is terminated. Protective Order ¶ 47. Although the Order permits a party to seek the materials from Respondents again in a subsequent case, it also absolves Respondents of any duty to maintain that material so it would be available should a request later be made. *Id.* If some of that material – especially material tending to

---

[2] Access to counsel is also essential to Petitioner's exercise of his DTA appeal rights. Therefore, Petitioner will seek entry of the existing Protective Order by the Court of Appeals in his to-be-filed DTA proceedings. It is nevertheless appropriate to retain the Protective Order entered by this Court as part of a stay of the habeas action.

exonerate the Petitioner – is lost or destroyed, the ability a Petitioner might otherwise have had to successfully maintain a future habeas hearing may be lost along with it.

Moreover, this Court required Respondents to produce a factual return. While this appears to contain far less than Respondents' entire file on Petitioner, it does offer some information that counsel is using to locate and retrieve relevant evidence abroad. If these files are closed off while a new protective order is developed in the DTA litigation, during this delay the quality of available evidence may erode, further degrading Petitioner's ability to seek habeas relief.

Petitioner and the undersigned counsel seek to ensure that evidence discoverable in a habeas proceeding remains extant so as to "ensure that the offices and purposes" of the writ are "not compromised."[3] The Protective and Case Management Orders' provisions affecting the preservation and availability of evidence should remain in place while further proceedings in this habeas action are stayed.

This Court established a framework for effective litigation of this habeas action despite the obstacles posed by concerns with national security and Petitioner's physical isolation. That framework has proved effective, and its continuation is essential if Petitioner is to preserve the practical ability to pursue the habeas remedies that he may ultimately be deemed to enjoy.[4]

---

[3] Preservation and availability of evidence are also essential to Petitioner's exercise of his DTA appeal rights. Therefore, Petitioner will seek entry of the evidence-related provisions in the existing Protective and Case Management Orders in his to-be-filed DTA proceedings. It is nevertheless appropriate to retain the Protective Order and Case Management Order entered by this Court as part of a stay of the habeas action.

[4] Moreover, should the Court dismiss this action, it should retain the Protective and Case Management Orders in place pending further proceedings. The Protective Order, like all protective orders directed to future events, survives dismissal of the case and may be modified, enforced, or dissolved only by separate order of the Court. *See, e.g., Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140-41 (2d Cir. 2004); *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993). Indeed, the Court when first entering the Protective Order in a Guantanamo action,

### III.    This Court Retains Subject-Matter Jurisdiction Since There Is a Genuine Possibility That Petitioners' Claims Will be Revived

The outright dismissal of this action sought by Respondents could eviscerate Petitioner's ability meaningfully to challenge his detention through a habeas action, despite the fact that a majority of the Supreme Court anticipates revisiting the jurisdictional issue. Fortunately, the law does not require that result.

This Court retains authority to decide its own jurisdiction in the first instance. *Kircher v. Putnam Funds Trust*, 126 S. Ct. 2145, 2155 (2006); *United States v. Ruiz*, 536 U.S. 622, 628 (2002). As it does so, it must acknowledge that the question of jurisdiction remains open: "as always, denial of certiorari does not constitute an expression of any opinion on the merits," Statement of JJ. Stevens and Kennedy, Slip Op. at 2, and a majority of the Supreme Court anticipates reconsideration of jurisdictional review once a more complete record of DTA remedies is developed. *Boumediene II*. Two Justices, implicitly supported by three others, expressly directed that habeas relief remain viable, and they clearly did so to ensure that any subsequent review of the jurisdictional issue would be meaningful. *Id.* Petitioner's habeas

---

expressly "retain[ed] continuing jurisdiction to enforce or modify the terms of [the Protective] Order. *See In re Guantanamo Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004). The Case Management Order is also directed to future events and should as well be maintained pending further proceedings. The relevant preservation provisions are particularly important, given the unresolved status of Petitioners' habeas claims and the damage to those potential claims that would result from the loss of evidence.

Respondents do not disagree with the principle that such orders survive dismissal, Resp. Brief at 8-9 n.15, but they wish the Court to retain only those provisions that constrain Petitioners and their counsel, and dismiss the provisions that constrain Respondents. Of course, as long as the Orders survive, they continue to govern both parties. *Cf. SRS Technologies, Inc. v. Physitron, Inc.*, 216 F.R.D. 525, 526 (N.D. Ala. 2003) (rejecting proposition that after settlement, the protective order would continue to protect one party's documents but not those of its opponent).

rights, which Respondents would have this Court treat as a nullity, are very much alive pending these DTA proceedings.

The language employed by Justices Stevens and Kennedy echoes the long-established principle that, while issues of jurisdiction remain open, the courts have "authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition." *United States v. United Mine Workers*, 330 U.S. 258, 291 (1947), *quoting United States v. Shipp*, 203 U.S. 563, 573 (1906) (Holmes, J.). The Circuit Court of the District of Columbia Circuit has not hesitated to apply these principles:

> Of course, whether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was 'authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition . . .' Clearly there was 'power to preserve existing conditions while . . . determining (the) authority to grant injunctive relief.'

*In re President and Directors of Georgetown College*, 331 F.2d at 1005 (internal citations omitted). This Court should preserve the status quo by retaining jurisdiction over this action while the issue of jurisdiction is resolved.

## IV.    A Stay-and-Abey Order Is Warranted

Recent Supreme Court precedent directs this Court in circumstances such as these to exercise its jurisdiction by entering a stay-and-abey order to preserve Petitioner's potential habeas rights. Moreover, a stay-and-abey order is appropriate in the peculiar circumstances of this litigation and would not prejudice Respondents.

### A.    *A Stay-and-Abey Order Is Routinely Entered While Alternatives to Habeas Are Exhausted*

In *Rhines v. Weber*, the Supreme Court explicitly approved the stay-and-abey procedure in an analogous context. 544 U.S. 269, 278 (2005). The prisoner had filed a mixed habeas petition in federal court that contained both claims already exhausted in the state courts and

claims that had not been exhausted. Given the procedural risks of a dismissal order, the Court found that district courts have discretion to enter stay-and-abey orders in a federal habeas case while unexhausted claims are presented to the state court.

The *Rhines* Court identified conditions in which a stay-and-abey order should be entered. It wrote, "it would likely be an abuse of discretion for a district court to deny a stay and to dismiss" if the petitioner demonstrated: (1) good cause for the failure to exhaust, and (2) potentially meritorious unexhausted claims. 544 U.S. at 274. Three justices added another requirement, (3) no record of intentionally dilatory tactics. 544 U.S. at 278; *accord, Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005). All three conditions are met here.

Petitioner had excellent cause for failure to exhaust his DTA remedies, since those remedies did not exist when this petition was filed on August 10, 2005. The DTA was adopted several weeks later, on December 30, 2005. Moreover, Petitioner's ability to pursue habeas relief survived enactment of the DTA. *Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2007). The Military Commissions Act, Pub. L. No. 109-366, 120 Stat. 2600 (October 17, 2006), which purports to suspend habeas jurisdiction, was not enacted until October 2006.

Second, Petitioner's claims are potentially meritorious. There is evidence of his innocence that has not been heard in a court of law or any other venue employing procedures likely to lead to an accurate decision.

Finally, Petitioner has not engaged in dilatory tactics. On the contrary, he has been diligent in pursuing relief. Petitioner has been confined at Guantanamo for over three years, in virtual isolation, cut off from his family, and subjected to harsh treatment and conditions. He has attempted to move this case forward since the day he filed his petition, while Respondents have consistently sought to prevent the claims from being heard.

B.    *The Pendency of Several Related Proceedings Further Counsels the Stay and Abeyance of this Action*

Several related matters are pending in the higher courts, and their disposition could affect this action. These actions are yet another basis for this Court to stay and abey rather than dismiss. First, the Court of Appeals has not yet issued the mandate in *Boumediene I.* Respondents in that case have moved to dismiss and Petitioners have opposed, asking the Court of Appeals to hold the case in abeyance. As long as the Court of Appeals has not issued the mandate in that case, dismissal here would be premature and inappropriate for that reason alone.

In addition, an original habeas petition on behalf of another Guantanamo detainee has been filed in the Supreme Court. *In re Ali*, No. 06-1194. Motions in that case are due to be filed in May, and the Supreme Court is likely to decide them in the coming months. The rulings in these cases may have implications for this Court's handling of the instant action.

C.    *A Stay-and-Abey Order Would Not Prejudice Respondents*

While dismissal of this action would have serious adverse consequences for Petitioner's potential habeas rights, staying this action would not unreasonably impair or burden Respondents in any way. Respondents have not contended otherwise.

A stay is particularly appropriate when, as here, the current Protective and Case Management Orders provide the only basis for Petitioner to engage in privileged communications with his counsel, provide a critical means for counsel to pursue the collection of favorable evidence, and in other ways preserve the viability of a future habeas action. In contrast, a stay of this action would not impose any unreasonable burden on Respondents. They would only have to continue to provide access to the factual return and permit Petitioner to communicate with his counsel. These are not burdensome or unreasonable requirements.

Dismissal of this action would be premature and could seriously prejudice Petitioner's constitutional rights, while staying this action and holding it in abeyance would not prejudice Respondents in any way.

> **V.     In the Alternative, This Court Should Transfer the Petition to the Court of Appeals or Stay Its Dismissal to Permit Petitioners to Seek Equivalent Protective and Case Management Orders From the Court of Appeals**

For all of the reasons stated above, the best course of action is for this Court to stay this action and hold it in abeyance pending exhaustion of Petitioner's remedies under the DTA and a final judicial determination of the adequacy of those remedies. Petitioner asks, however, that at a minimum the Court preserve the Protective and Case Management Orders in this action while Petitioner seeks similar protections from the Court of Appeals, by transferring this matter with these orders intact to the Court of Appeals.

> *A.     Transfer of This Action to the Court of Appeals With the Protective and Case Management Orders in Place Would Be Appropriate*

Pursuant to 28 U.S.C. § 2241(b), this Court may transfer Petitioner's habeas application to a Court having jurisdiction to entertain it. *See also Rumsfeld v. Padilla*, 543 U.S. 426, 442 – 43 (2004). Under Section 1005(e)(2)(A) of the DTA, the Court of Appeals will handle the DTA appeals and could assume custody of the habeas petitions in connection with that process. Authority to transfer this action to the Court of Appeals is also provided by the All Writs Act, 28 U.S.C. § 1651, which authorizes this court to issue any writ necessary or appropriate to aid its jurisdiction. Should the Court determine to order such a transfer, Petitioner asks that the Court's order explicitly maintain in effect the Protective and Case Management Orders.

B.    *At a Minimum, the Court Should Stay the Dismissal of this Action Until the Court of Appeals Rules on Case Management Orders*

In the alternative, Petitioner asks the Court to stay its dismissal of this action pending resolution of counsel access, evidence preservation, and other case management issues in the DTA proceedings to be filed on Petitioner's behalf in the Court of Appeals on or before June 1, 2007. This stay would enable Petitioner to make the necessary filings in the Court of Appeals and enable that court to resolve the issues. It is necessary to protect Petitioner's access to his counsel, otherwise maintain the viability of potential future habeas litigation, and prevent manifest injustice.

## CONCLUSION

By seeking to dismiss rather than stay and abey this case, Respondents hope to suspend, if not erase, the requirements of the Protective and Case Management Orders in this action, and permanently prejudice Petitioner's ability to vindicate his habeas rights in the future. This would conflict with well-established precedence and flout the directives of a majority of the Justices of the Supreme Court, and this Court should reject that approach.

For all of the foregoing reasons, Petitioner asks the Court to stay and abey this action pending Petitioner's exhaustion of his remedies under the Detainee Treatment Act and a final judicial determination of the constitutional adequacy of those remedies, thereby ensuring that "the office and purpose of the writ of habeas corpus are not compromised." In the alternative, Petitioner asks the Court either to transfer this case to the Circuit Court of Appeals subject to the Protective and Case Management Orders or stay the dismissal of this case until the D.C. Circuit Court of Appeals rules on the issues addressed by those orders in the DTA proceedings to be filed in that court on behalf of Petitioner on or before June 1, 2007.

Respectfully submitted,

Rebecca P. Dick
D.C. Bar No. 463197
Carolyn M. Welshhans
D.C. Bar No. 489120
DECHERT LLP
1775 I Street, N.W.
Washington, D.C.  20006
(202) 261-3300 (Tel.)
(202) 261-3333 (Fax)

George G. Gordon
Peter M. Ryan
Juliet Sarkessian
Cira Centre
2929 Arch Street
Philadelphia, PA  19104-2808
(215) 994-4000 (Tel.)

Daniel C. Malone
30 Rockefeller Plaza
New York, NY  10112
(212) 698-3500 (Tel.)

Counsel for Petitioner

May 3, 2007

# CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2007, I served the foregoing Petitioner's Motion to Stay

and Abey this Action or, in the Alternative, Transfer It to the Court of Appeals, and the

accompanying Petitioner's Brief in Opposition to Respondents' Motion to Dismiss and in

Support of Petitioners' Motion, on the counsel listed below by causing an original and six copies

to be filed with the Court Security Officer via messenger, with one copy to be conformed and

returned to our office.

Peter D. Keisler
Douglas N. Letter
Joseph H. Hunt
Vincent M. Garvey
Judry L. Subar
Terry M. Henry
James J. Schwartz
Edward H. White
Robert J. Katerberg
Andrew I. Warden
Nicholas J. Patterson
Jean Lin
Nicholas A. Oldham
James C. Luh

United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C.  20530

Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents

Carolyn M. Welshhans