Exhibit A

Cite as: 549 U. S. ___ (2007)          1

Statement of STEVENS and KENNEDY, JJ.

# SUPREME COURT OF THE UNITED STATES

## LAKHDAR BOUMEDIENE ET AL.

06–1195                    *v.*

## GEORGE W. BUSH, PRESIDENT OF THE UNITED STATES, ET AL.

## KHALED A. F. AL ODAH, NEXT FRIEND OF FAWZI KHALID ABDULLAH FAHAD AL ODAH, ET AL.

06–1196                    *v.*

## UNITED STATES ET AL.

### ON PETITIONS FOR WRITS OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

Nos. 06–1195 and 06–1196.   Decided April 2, 2007

The petitions for writs of certiorari are denied.

Statement of JUSTICE STEVENS and JUSTICE KENNEDY respecting the denial of certiorari.

Despite the obvious importance of the issues raised in these cases, we are persuaded that traditional rules governing our decision of constitutional questions, see *Ashwander* v. *TVA*, 297 U. S. 288, 341 (1936) (Brandeis, J., concurring), and our practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus, cf. *Ex parte Hawk*, 321 U. S. 114 (1944) *(per curiam)*, make it appropriate to deny these petitions at this time. However, "[t]his Court has frequently recognized that the policy underlying the exhaustion-of-remedies doctrine does not require the exhaustion of inadequate remedies." *Marino* v. *Ragen*, 332 U. S. 561, 570, n. 12 (1947) (Rutledge, J., concurring). If petitioners later seek to establish that the

2                         BOUMEDIENE *v.* BUSH

Government has unreasonably delayed proceedings under
the Detainee Treatment Act of 2005, Tit. X, 119 Stat.
2739, or some other and ongoing injury, alternative means
exist for us to consider our jurisdiction over the allegations
made by petitioners before the Court of Appeals.  See 28
U. S. C. §§1651(a), 2241.  Were the Government to take
additional steps to prejudice the position of petitioners in
seeking review in this Court, "courts of competent jurisdic-
tion," including this Court, "should act promptly to ensure
that the office and purposes of the writ of habeas corpus
are not compromised."  *Padilla* v. *Hanft*, 547 U. S. 1062,
1064 (2006) (KENNEDY, J., concurring in denial of certio-
rari).  And as always, denial of certiorari does not consti-
tute an expression of any opinion on the merits.  See *Rasul*
v. *Bush*, 542 U. S. 466, 480–481 (2004) (majority opinion of
STEVENS, J.); *id.*, at 487 (KENNEDY, J., concurring in
judgment).

BREYER, J., dissenting

# SUPREME COURT OF THE UNITED STATES

## LAKHDAR BOUMEDIENE ET AL.

06–1195    *v.*

### GEORGE W. BUSH, PRESIDENT OF THE UNITED STATES, ET AL.

### KHALED A. F. AL ODAH, NEXT FRIEND OF FAWZI KHALID ABDULLAH FAHAD AL ODAH, ET AL.

06–1196    *v.*

### UNITED STATES ET AL.

ON PETITIONS FOR WRITS OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

Nos. 06–1195 and 06–1196.  Decided April 2, 2007

JUSTICE BREYER, with whom JUSTICE SOUTER joins, and with whom JUSTICE GINSBURG joins as to Part I, dissenting from the denial of certiorari.

I would grant the petitions for certiorari and expedite argument in these cases.

I

Petitioners, foreign citizens imprisoned at Guantanamo Bay, Cuba, raise an important question: whether the Military Commissions Act of 2006, Pub. L. 109–366, 120 Stat. 2600, deprives courts of jurisdiction to consider their habeas claims, and, if so, whether that deprivation is constitutional. I believe these questions deserve this Court's immediate attention.

First, the "province" of the Great Writ, "shaped to guarantee the most fundamental of all rights, is to provide an effective *and speedy* instrument by which judicial inquiry may be had into the legality of the detention of a person." *Carafas* v. *LaVallee*, 391 U. S. 234, 238 (1968) (emphasis

2                BOUMEDIENE v. BUSH

added and footnote omitted). Yet, petitioners have been held for more than five years. They have not obtained judicial review of their habeas claims. If petitioners are right about the law, immediate review may avoid an additional year or more of imprisonment. If they are wrong, our review is nevertheless appropriate to help establish the boundaries of the constitutional provision for the writ of habeas corpus. Cf. *Carafas, supra.* Finally, whether petitioners are right or wrong, our prompt review will diminish the legal "uncertainty" that now "surrounds" the application to Guantanamo detainees of this "fundamental constitutional principle." Brief for Senator Arlen Specter as *Amicus Curiae* 19; see generally *ibid.* (favoring expedited consideration of these cases). Doing so will bring increased clarity that in turn will speed review in other cases.

Second, petitioners plausibly argue that the lower court's reasoning is contrary to this Court's precedent. This Court previously held that federal jurisdiction lay to consider petitioners' habeas claims. *Rasul* v. *Bush*, 542 U. S. 466, 485 (2004) (providing several of these petitioners with the right to habeas review under law as it then stood). Our analysis proceeded under the then-operative statute, but petitioners urge that our reasoning applies to the scope of the constitutional habeas right as well. In holding that the writ extended to the petitioners in *Rasul*, we said that Guantanamo was under the complete control and jurisdiction of the United States. *Id.,* at 480–481; *id.,* at 487 (KENNEDY, J., concurring in judgment) ("Guantanamo Bay is in every practical respect a United States territory"). We then observed that the writ at common law would have extended to petitioners:

"Application of the habeas statute to persons detained at the base is consistent with the historical reach of the writ of habeas corpus. At common law, courts ex-

BREYER, J., dissenting

ercised habeas jurisdiction over the claims of aliens detained within sovereign territory of the realm, as well as the claims of persons detained in the so-called exempt jurisdictions, where ordinary writs did not run, and all other dominions under the sovereign's control . . . . [E]ven if a territory was no part of the realm, there was no doubt as to the court's power to issue writs of habeas corpus if the territory was under the subjection of the Crown." *Id.,* at 481–482 (internal quotation marks and footnotes omitted).

Our reasoning may be applicable here. The lower court's holding, petitioners urge, disregards these statements and reasoning.

Further, petitioners in *Boumediene* are natives of Algeria, and citizens of Bosnia, seized in Bosnia. Pet. for Cert. in No. 06–1195, p. 4. Other detainees, including several petitioners in *Al Odah,* also are citizens of friendly nations, including Australia, Canada, Kuwait, Turkey, and the United Kingdom; and many were seized outside of any theater of hostility, in places like Pakistan, Thailand, and Zambia. Pet. for Cert. in No. 06–1196, pp. 2–3, and n. 2; 476 F. 3d 981, 1007 (CADC 2007) (Rogers, J., dissenting). It is possible that these circumstances will make a difference in respect to our resolution of the constitutional questions presented. Cf. *Hamdi* v. *Rumsfeld,* 542 U. S. 507, 509, 514, 521 (2004) (plurality opinion of O'Connor, J., joined by Rehnquist, C. J., and KENNEDY and BREYER, JJ.) (holding military had authority to detain United States citizen "enemy combatant," captured in a *"zone of active combat* in a foreign theater of conflict," specifically Afghanistan, and stressing, in a "narrow" holding, that *"[a]ctive combat operations against Taliban fighters . . . [were] ongoing in Afghanistan"* (emphasis added)).

The Government, of course, contests petitioners' arguments on the merits. But I do not here say petitioners are

4                    BOUMEDIENE *v.* BUSH

correct; I say only that the questions presented are signifi-
cant ones warranting our review.

    If petitioners have the right of access to habeas corpus
in the federal courts, this Court would then have to con-
sider whether Congress' provision in the Detainee Treat-
ment Act of 2005 (DTA), Tit. X, 119 Stat. 2739, providing
for review in the Court of Appeals for the D. C. Circuit of
those proceedings, is a constitutionally adequate substi-
tute for habeas corpus. See *Swain* v. *Pressley*, 430 U. S.
372, 381 (1977). The Government argues that we should
therefore wait for a case where, unlike petitioners here,
the detainee seeking certiorari has actually sought and
received review under these alternative means. *E.g.*, Brief
in Opposition 16–17. Petitioners respond, however, that
further proceedings in the Court of Appeals under the
DTA could not possibly remedy a constitutional violation.
The lower court expressly indicated that *no constitutional
rights* (not merely the right to habeas) extend to the Guan-
tanamo detainees. 476 F. 3d, at 991–992 (rejecting peti-
tioners' arguments under this Court's precedent that
fundamental rights afforded by the Constitution extend to
Guantanamo, and noting that "[p]recedent in this circuit
also forecloses the detainees' claims to constitutional
rights"). Therefore, it is irrelevant, to petitioners, that the
DTA provides for review in the D. C. Circuit of any consti-
tutional infirmities in the proceedings under that Act,
§1005(e)(2)(C)(ii), 119 Stat. 2742; the lower court has
already rendered that provision a nullity.

    Nor will further percolation of the question presented
offer elucidation as to either the threshold question
whether petitioners have a right to habeas, or the question
whether the DTA provides a constitutionally adequate
substitute. It is unreasonable to suggest that the D. C.
Circuit in future proceedings under the DTA will provide
review that affords petitioners the rights that the Circuit
has already concluded they do not have. Ordinarily, ha-

BREYER, J., dissenting

beas petitioners need not exhaust a remedy that is inade-
quate to vindicate the asserted right. See *Wilwording* v.
*Swenson,* 404 U. S. 249, 250 (1971) *(per curiam).*

   The Government, in *Hamdan* v. *Rumsfeld,* 548 U. S. ___
(2006), similarly argued for delay. *Id.,* at ___ (slip op., at
52) ("The Government objects to our consideration of any
procedural challenge at this stage on the grounds that . . .
[petitioner] will be able to raise any such challenge follow-
ing a 'final decision' under the DTA"). That case, too,
presented questions of the scope of the Guantanamo de-
tainees' right to federal-court review of DTA-authorized
procedures. We there rejected the Government's argu-
ment for delay as unsound. *Id.,* at ___–___ (slip op., at 52–
53) ("[C]ontrary to the Government's assertion, there *is* a
'basis to presume' that the procedures . . . violate the
law . . . . Under these circumstances, review . . . in ad-
vance of a 'final decision' . . . is appropriate").

   Here, as in *Hamdan,* petitioners argue that the tribu-
nals to which they have already been subjected were
infirm (by, *inter alia,* denying Petitioners counsel and
access to evidence, Pet. for Cert. in No. 06–1195, p. 7).
*Hamdan, supra,* at ___–___ (slip op., 35–36). Here, as in
*Hamdan,* petitioners assert that these procedural infirmi-
ties cannot be corrected by review under the DTA which
provides for no augmentation of the record on appeal and,
as noted above, will provide no remedy for any constitu-
tional violation. See DTA §1005(e)(2)(C), 119 Stat. 2742;
476 F. 3d, at 1005 (Rogers, J., dissenting). Here, as in
*Hamdan, supra,* at ___ (slip op., at 25), petitioners have a
compelling interest in assuring in advance that the proce-
dures to which they are subject are lawful. And here,
*unlike Hamdan,* the military tribunals in Guantanamo
have completed their work; all that remains are the ap-
peals. For all these reasons, I would grant the petitions.

6                    BOUMEDIENE *v.* BUSH

## II

Moreover, I would expedite our consideration. In the past, this Court has expedited other cases where important issues and a need for speedy consideration were at stake. In *Ex parte Quirin*, 317 U. S. 1 (1942), the Court decided that it should grant expedited consideration,

> "[i]n view of the public importance of the questions raised by [the] petitions and of the duty which rests on the courts, in time of war as well as in time of peace, to preserve unimpaired the constitutional safeguards of civil liberty, and because in our opinion the public interest required that we consider and decide those questions without any avoidable delay." *Id.,* at 19.

See also *Felker* v. *Turpin*, 518 U. S. 651 (1996); *New York Times Co.* v. *United States*, 403 U. S. 713 (1971) *(per curiam); Youngstown Sheet & Tube Co.* v. *Sawyer*, 343 U. S. 579 (1952).

For these reasons, I would grant the petitions for certiorari and the motions to expedite the cases in accordance with the schedule deemed acceptable (in the alternative) by the Government.